20228

The CRESCENT COMPANY OF SPARTANBURG, INC., Appellant, v. INSURANCE COMPANY OF NORTH AMERICA, Respondent

(225 S. E. (2d) 656)

*Toney J. Lister, Esq.,* of *Henderson & Lister,* Spartanburg, *for Appellant,*

*James W. Hudgens, Esq.,* of *Ward, Howell, Barnes & Long,* Spartanburg, *for Respondent,*

*Toney J. Lister, Esq.,* of *Henderson & Lister,* Spartanburg, *for Appellant, in Reply.*

June 2, 1976.

NESS, Justice:

Appellant, the Crescent Company of Spartanburg, a land development company, contracted with respondent, Insurance Company of North America (INA), for insurance coverage for houses under construction. Several houses owned by appellant were allegedly vandalized and it sought

compensation. INA denied liability, contending coverage was barred by certain exclusions in the policy, and moved for and was granted summary judgment. We affirm in part and reverse in part.

In April, 1972, INA issued a fire insurance policy to the Crescent Company. The Crescent Company paid an added premium for a vandalism and malicious mischief endorsement. It seeks recovery under the endorsement which contains the following provision:

"This company (INA) shall *not be liable* for loss *if the described building(s) had been vacant or unoccupied beyond a period of thirty (30) consecutive days* immediately preceding the loss, whether or not such period commenced prior to the inception date of this coverage; but a *building in process of construction* shall not be deemed vacant or unoccupied . . ." (Emphasis supplied.)

In 1972 Crescent Company began constructing houses which could be sold under federally financed programs (235 houses) for low income families. By early 1973 all work on these houses completely ceased. No work was performed on these houses for approximately two years prior to the time the alleged vandalism took place. The houses were 96% complete at the time the damage was discovered. The 4% unfinished work involved installation of appliances, grading of the yards, interior painting and decorating and final preparation for sale.[1] The two owners of the Crescent Company testified they did not complete the houses due to the discontinuance of federal financing which rendered the houses unmarketable. Any additional investment by appellant would not have been prudent.

---

[1] By inference appellant argues there may have been slightly more than 4% left due to a number of site preparation-final sale improvements remaining. The construction lender had calculated the houses were 96% complete and the owners of the appellant corporation testified that this figure was a fair appraisal. Perhaps it could be argued that the houses were only 93% to 94% complete as opposed to 96%; however, because of the view we take on this issue, such a difference would be inconsequential and thus not a disputed material fact.

The trial judge held that the houses were not in process of construction and had been vacant for more than thirty days. Therefore, he concluded INA was not liable for any damage resulting from the vandalism. In effect, the trial judge ruled as a matter of law that the houses were not "in process of construction."

The above recited facts are conceded in the instant appeal. However Crescent Company contends that the insurance policy is ambiguous in that it does not define "in process of construction" and that such ambiguity must be resolved in favor of the insured. Second, it contends that it made written reports and paid premiums every month during the two year period for the endorsement coverage, that INA had knowledge both that the premiums relative to the vandalism coverage were paid and that the houses had been 96% completed for over two years and had been unoccupied throughout this period. Therefore, Crescent Company alternatively argues INA is estopped from denying coverage or that it waived the conditions restricting its liability under the vandalism coverage.

It is often difficult to determine whether an insurance policy is ambiguous. The parties agree that no South Carolina cases have interpreted the phrase "in process of construction." Respondent would assign one of several dictionary definitions which would require an ongoing series of actions calculated to achieve the objective of completed houses. The appellant argues the failure of the policy to explicitly define the phrase "in process of construction" creates an ambiguity and the settled law governing construction of insurance policies liberally in favor of the insured should apply.

Under certain circumstances, the term "in process of construction," without further definition, may be ambiguous. In the instant appeal, the testimony of the insured's officers revealed that the work on the houses had been interrupted and that for two years the houses were left dormant. The reasons assigned for the insured's failure to complete the

houses were unrelated to considerations relative to construction. Rather, they involved the unmarketability of the houses resulting from cancellation of a government sponsored financing program.

We do not think it can be fairly said that the vandalism coverage for a house "in process of construction" was to run in perpetuity from the time of ground breaking regardless of the insured's actions postponing completion of the houses. The reason for charging an extra premium for vandalism and for restricting it to houses in process of construction is obvious: excessive vandalism occurs when houses or buildings are vacant. Under other policy provisions, a house vacant for more than thirty consecutive days was not covered for vandalism. The "in process of construction" clause was obviously designed to extend coverage for houses during normal periods of construction. Without it, coverage generally would have been unavailable due to the thirty day non-occupancy provision. Under the circumstances of this case, the term "in process of construction" was not ambiguous and the application of it to the facts of this case was properly submitted and ruled upon by the circuit court.

The next issue is whether the appellant's claim of estoppel raised factual issues not properly disposed of by summary judgment. The appellant did not plead estoppel, nor did the lower court deal with this issue in its order. The appellant excepted to the lower court's order and has argued on appeal that he presented the issue to the lower court. At oral argument respondent did not deny appellant's allegation, therefore, we assume that the issue of estoppel was presented to the lower court, although the record is less than clear.[2]

---

[2] Respondent has argued, that, as a matter of prudence, estoppel should have been pleaded. We agree, however, in the absence of a statute requiring estoppel to be pleaded, it is not necessary to do so. *Lee v. Southern Railway Company,* 228 S. C. 240, 89 S. E. (2d) 431 (1955); *Spencer v. Republic National Life Insurance Company,* 243 S. C. 317, 323, 133 S. E. (2d) 826 (1963).

There was testimony by deposition before the lower court that appellant paid extra premiums for vandalism coverage every month during the two years after the houses were 96% completed and unoccupied. With commendable candor, counsel for respondent has informed the Court that information concerning the date the construction commenced and the percentage completed each month was furnished to the respondent monthly on its forms or reports available to it. The testimony before the lower court referred obliquely to these reports.

The scope of risk under an insurance policy can be extended by estoppel if the insurer has misled the insured into believing the particular risk is within the coverage. *Spencer v. Republic National Life Insurance Company, supra; Pitts v. New York Life Insurance Company,* 247 S. C. 545, 148 S. E. (2d) 369 (1966) ; *Johnson v. Wabash Life Insurance Company,* 244 S. C. 95, 135 S. E. (2d) 620 (1964) ; *Ellis v. Metropolitan Casualty Insurance Company of New York,* 187 S. C. 162, 163, 197 S. E. 510 (1938) ; *Preferred Risk Mutual Insurance Company v. Thomas,* 372 F. (2d) 227, 230 (4th Cir. 1967).

"The essential elements of equitable estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance." *Pitts v. New York Life Insurance Company, supra,* 247 S. C., page 552, 148 S. E. (2d) page 371.

Summary judgment is not proper unless it is perfectly clear that no issue of fact is involved *and* inquiry into the facts is not desirable to clarify the application of the law. This is even true when there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom. *Gardner v. Campbell,* 257 S. C. 209, 184 S. E. (2d) 700 (1971).

The officers of the appellant corporation testified they thought the policy covered the house, and that they assumed the houses were in process of construction due to the remaining work which must be completed prior to any sale. Apparently, they did not secure any additional insurance or employ a security agency to protect against potential vandalism. Their actions were allegedly based on the assumption that INA was receiving and retaining the monthly premium for vandalism coverage. This testimony and the confessions made by the respondent relative to the information furnished it on the forms necessitates further inquiry into the viability of an issue of estoppel.

Appellant alternatively argued that it should prevail by reason of the respondent's waiver of the conditions restricting its liability under the vandalism endorsement. Waiver must be pleaded in the complaint. While this requirement is not so strict as to insist upon the use of the word waiver, the complaint must at a minimum allege facts that constitute a waiver. *Carolina Mechanical Contractors, Inc. v. Yeargin Construction Company, Inc.*, 261 S. C. 1, 9, 198 S. E. (2d) 224 (1973). The appellant failed to plead waiver expressly or by implication from the facts alleged. Accordingly, the issue of waiver is not raised by the pleadings and is not properly argued upon appeal.

The judgment of the lower court is affirmed in part and reversed and remanded for further consideration on the issue of estoppel.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.