ALLEN, *Appellant,*
*v.*
CONTINENTAL CASUALTY COMPANY,
*Respondent.*

(TC A 7601 00571, SC 25076)

572 P2d 617

Brian E. Jeanotte, Portland, argued the cause for appellant. With him on the brief were George R. Waldum and Roger V. Holm, Portland.

William R. Miller, Jr., Portland, argued the cause for respondent. With him on the brief were William L. Hallmark and Jones, Lang, Klein, Wolf & Smith, Portland.

Before Denecke, Chief Justice, and Holman and Tongue, Justices, and Gillette, Justice Pro Tempore.

TONGUE, J.

**TONGUE, J.**

This is an action to recover accidental death benefits under an insurance policy issued by defendant to Mt. Hood Community College for the benefit of its employees. The case was tried on stipulated facts before the court, without a jury. Plaintiff appeals from a judgment for the defendant.

The insurance policy included the following provisions:

"The hazards against which insurance is provided under this policy, provided such hazards arise *while the insured person is on the business of the holder,* are injuries sustained by an insured person anywhere in the world (excluding every day travel to and from work and bonafide vacations).

"* * * * *

"The term 'on the business of the employer', as used in this policy, *means on assignment by or with the authorization of the holder for the purpose of furthering the business of the holder.*" (Emphasis added)

The question to be decided is whether, at the time of his death, decedent was "on assignment by or with the authorization of the holder for the purpose of furthering the business of the holder."

In deciding this question we must bear in mind that although an insurance company is ordinarily entitled to the enforcement of an insurance policy as written by the company if its terms are clear and unambiguous, in the event of an ambiguity in the terms of an insurance policy any reasonable doubt will be resolved against the insurance company and in favor of extending coverage to the insured. *Farmers Mut. Ins. Co. v. Un. Pac. Ins.,* 206 Or 298, 305, 292 P2d 492 (1956); *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 508-09, 500 P2d 258 (1972).

We have also said that when words or terms of a general nature are used in an insurance policy such words or terms may be ambiguous, in the legal sense, when they can reasonably be given a broader or a

narrower meaning, depending upon the intention of the parties in the context in which such words are used by them. *See Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 410-11, 551 P2d 478 (1976), and cases cited therein.

The agreed facts in this case are as follows. On July 1, 1975, at about 9:54 a.m., while driving from Mt. Hood Community College to the Portland Teacher's Credit Union, Kenneth Duane Allen was killed when his car was involved in an automobile accident.

At the time of his death, Mr. Allen was a full-time employee of the Security Department of Mt. Hood Community College. Security was generally responsible for traffic control, first aid, emergency services, responding to bomb threats, fights, fires, and the like. Most of these services were performed by security employees on the campus. Security employees also performed investigations and other services, and picked up and delivered equipment off campus.

Mr. Allen was employed as a patrolman. He was employed on a salary basis with overtime pay for any work over 40 hours in any week. He worked five days a week, from 8 a.m. to 4 p.m., including a paid half-hour lunch. As a patrolman, Mr. Allen was expected to be on duty and responsive to events during his entire eight-hour shift. He was not allowed to schedule set coffee breaks or lunch times. He was expected to break or eat whenever the press of events allowed. Furthermore, during a break or lunch period he was required to stand by to respond to emergency or other situations.

Mr. Allen wore a uniform with certain equipment. He was required to carry and monitor a two-way transceiver radio with him while on duty, including those times when he was off campus. Security's base radio could communicate with a patrolman via his radio at a range of 25-30 miles. The radios were used to call patrolmen to respond to emergencies and for other communications. A patrolman was permitted to leave campus during his lunch so long as he remained

available to and did in fact respond to radio calls. A patrolman who did not respond to a radio call would usually be counseled in the first instance, reprimanded in the second instance, and probably fired in the third instance.

Prior to his death, Mr. Allen usually ate lunch at home, located two miles from campus. He had been called upon via radio to answer questions about log entries or the like during his lunch. He had occasionally been required to interrupt and cut short his lunch in response to a radio call to return to campus for such reasons as to cover the campus while a fellow patrolman took an injured party to the hospital or to assist a motorist.

Full-time employees of the college were allowed to join the Portland Teacher's Credit Union as a voluntary fringe benefit. Mr. Allen had so joined.

Before leaving campus a patrolman was required to notify the security switchboard operator of his destination. He was also required to turn his radio on. On the date of his death, shortly before 10 a.m., Mr. Allen informed the switchboard operator he was taking an early lunch to go to the credit union and that he had his radio so they could reach him if they needed him. Mr. Allen wanted to go to the credit union to reduce the amount deducted by the college from his paycheck on behalf of the credit union for repayment of car loans. He then left for the credit union. He was killed about four minutes after he left campus.

The college did not ask Allen to do anything for it while he was on this errand. His errand was not precipitated by any of the requirements that occasionally take security personnel off campus.

The college permitted Allen to take a security truck home for lunch only when Allen was the only patrolman, other than a student, on duty at the campus. His supervisor, Mr. Schmelger, "would have frowned" on Allen using a security truck for personal business. At

[ 635 ]

the time of the accident, Allen was not driving a college-owned vehicle, but rather was driving his personal automobile. The security truck had no mechanical problems which would have prevented Allen from using it were he on official business.

Defendant's contentions may be summarized as follows: To prove coverage, plaintiff must establish as a matter of law that Allen was "on assignment by or with the authorization of" Mt. Hood Community College and that his errand was "for the purpose of furthering the business of" the college; that plaintiff has been unable to identify any facts or cite any case supporting her argument that Allen's conduct at the time of his death was "for the purpose of furthering" his employer's business; that "when reduced to its simplest form," plaintiff's argument is that because Allen was "on call" at the time of the accident, he was "furthering the business of" his employer at that time; that this argument has been rejected in analogous cases; and that when an employee's physical location and activity are determined solely by his own needs there is no coverage for an injury occurring at that time under a policy which limits coverage to injuries occurring while "on the business of the holder."[1]

We disagree. Plaintiff was employed as a security officer. He worked an eight-hour day, from 8 a.m. to 4 p.m., including one-half hour for lunch, for which he was paid. He was at all times "on call" through a two-way transceiver radio, which he was required to carry at all times while on duty, including those times when he was off campus.

One of the primary purposes of the employment of a security officer is to have such a person available in

---

[1]Defendant makes no contention that this is a case in which this court is bound by the finding of the trial court that decedent was not, at the time of his death, "on the business" of the college if that finding was supported by any substantial evidence.

As held in *Meier v. Porter,* 256 Or 261, 266, 472 P2d 814 (1970):

"* * * That established principle does not apply here because the facts were undisputed and we are not concerned with findings of fact but with an interpretation of the contract."

the event of need arising from events such as traffic problems, accidents, fights, fires, bomb threats and the like. It follows that much of the time for which a security officer is hired and paid is time spent in waiting, during which the officer is "on call" and available, but is not performing any active duties. The officer is paid for that time because it is to the advantage of his employer to have a security officer "on call" and available at all times. At such times, his duties consisted solely of maintaining his readiness and capability to respond to such calls.

The college received a benefit from this arrangement in that it made it possible to maintain a security force constantly ready and able to respond to calls. There was also a further benefit to the college in that this arrangement avoided the necessity of hiring additional security officers to fill in for those who might otherwise have taken time off for lunch.

It follows, in our opinion, that a security officer who is subject to immediate call through a radio which he is required to carry is then engaged in "furthering the business" of his employer, even though he may then be eating his lunch during his paid one-half hour lunch period.

It is also our opinion that a different result is not required because at that time the officer is off the premises of his employer with his employer's permission, provided that he is still subject to immediate call and is being paid during that time to be "on call." As an example, a college security officer who is eating his lunch while sitting in his own car parked off campus with the permission of his superior and with his radio turned on and subject to immediate call in the event of any need would, in our opinion, still be "furthering the business" of his employer.

The same result follows in this case, in our opinion. This security officer had permission to go to the credit union during his lunch time. He carried his radio with him, as required, and at all times was within radio

range and subject to immediate call in the event of need.

At the time of oral argument defendant also contended that plaintiff failed to prove that decedent at the time of his death was "on assignment by or with the authorization" of the college in that there was no evidence of any "authorization" for his trip to the credit union.

It appears from the record, however, that decedent's supervisor testified as follows:

"Q   Had other employees including Mr. Lewis [been] going to the Credit Union on their lunch break prior to this date?

"A   Yes sir.

"Q   Was that an approved trip that you would approve of?

"A   It is approved by me."

and

"Q   Was he required to stop his lunch break or stop whatever he was doing to return to Campus?

"A   Yes sir; depending on the nature of the problem, but if it were an emergency, and we called him back, he would be expected to come back right away."

Under the agreed facts of this case we hold that at the time of his death decedent was "on assignment by or with the authorization" of the college "for the purpose of furthering the business" of the college. We believe that these terms were "terms of a general nature" so as to be "ambiguous, in the legal sense," in that they could reasonably be given a broader or narrower meaning, depending upon the intention of the parties in the context in which such words were used, so as to at least give rise to a reasonable doubt as to the intended meaning of those terms, as applied to the facts of this case. If follows that such a doubt must be resolved against the insurance company and in favor of extending coverage to the decedent.

Defendant cites no cases in support of its position involving insurance policies with similar provisions.

Plaintiff cites a number of cases in support of her position, including *Ollier v. Continental Casualty Company,* 441 F2d 792 (6th Cir 1971), involving an identical policy provision, but quite different facts. It is of interest, however, to note that the court held (at 795) that:

> "* * * Any reasonable interpretation of the policy resulting in coverage of the insured must be adopted by the trial court in Ohio. [Citing cases]"

Defendant cites workers' compensation cases involving somewhat similar facts as requiring a contrary result. At the time of the trial of this case, however, defendant took the position that the fact that it had been held in the Circuit Court of Multnomah County that this decedent's death "arose out of and in the course of his employment" within the meaning of the Oregon Workmen's Compensation Law "has no relevancy to any issue in this case" because that case involved "the question of compensability under the Workmen's Compensation Act," while "this case deals with specific language of an insurance policy." We agree. It follows that the workers' compensation cases now cited by defendant are not on point in this case.

The judgment of the trial court is reversed and this case is remanded to it with instructions to enter judgment in favor of the plaintiff.