Argued and submitted March 3, affirmed June 24, 1980

# WESTERN FIRE INSURANCE COMPANY,
*Respondent,*

*v.*

## WALLIS, et al,
*Petitioners.*

(No. A7706-07917, CA 12981, SC 26668)

613 P2d 36

Raymond J. Conboy, Portland, argued the cause for petitioners. On the brief were Raymond J. Conboy, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Edward H. Warren, Portland, argued the cause for respondent. On the briefs were Edward H. Warren, Timothy N. Brittle, and Acker, Underwood, Beers, Smith & Warren, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson, and Tanzer, Justices.

PETERSON, J.

## PETERSON, J.

The issue in this case is whether the no-fault personal injury protection coverage (PIP coverage) of a motor vehicle insurance policy includes loss of income benefits to the survivors of a person who was killed while driving an automobile covered by the policy. The insurer sought a declaratory judgment to resolve the disputed issue of coverage. On motions for summary judgment filed by both parties, the trial court ruled that defendants were entitled to receive those benefits. The Court of Appeals reversed per curiam, 43 Or App 476, 602 P2d 1170 (1979), citing its decision in *Perez v. State Farm Mutual Auto. Ins. Co.,* 43 Or App 19, 602 P2d 284 (1979). We granted petitions for review in both cases.

Defendants are the personal representative and heirs of Rachelle Gerhold, who was killed in an accident while she was driving the insured vehicle. Defendants claim benefits for loss of income resulting from Ms. Gerhold's death, basing that claim on two alternative arguments. They first contend that under ORS 743.800, which requires PIP coverage in every motor vehicle policy, benefits exist for loss of income resulting from death. We rejected that construction of the statute in *Perez v. State Farm Mutual Ins. Co.,* 289 Or 295, 613 P2d 32 (1980), decided this day. We need here consider only defendants' other contention that even if the statute does not require that coverage, the plaintiff drafted its policy using broader language than the statute required and therefore coverage exists under the policy. ORS 743.820.[1]

The relevant policy provisions, somewhat different from those involved in *Perez,* are:

---

[1] ORS 743.820 provides:

"Nothing in ORS 731.418, 743.786 to 743.795 and 743.800 to 743.835 is intended to prevent an insurer from providing more favorable benefits than those required by ORS 743.800 and 743.805."

### "*OREGON PERSONAL INJURY PROTECTION*

"The Company will pay Oregon Personal Injury Protection benefits for:

(a) *medical* and *hospital expenses,*
(b) *income continuation expenses,*
(c) *loss of services expenses* and
(d) *funeral expenses*

incurred with respect to *bodily injury* sustained by an *injured person* and caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* as a *motor vehicle.*

"\* \* \* \* \*.

### "*Definitions*

"When used in reference to this insurance:

"\* \* \* \* \*.

" '*bodily injury*' means bodily injury, sickness or disease, including death at any time resulting therefrom.

"\* \* \* \* \*.

" '*income continuation expenses*' means 70% of the injured person's loss of income from work during a period of disability caused by *bodily injury* sustained by such person in the accident; provided that

"\* \* \* \* \*.

"(3) *income continuation expenses* shall include only expenses for loss of income incurred from the date such disability commenced to the date on which such person is able to return to his usual occupation or upon the expiration of not more than 52 weeks from the commencement of such disability, whichever occurs first;

" '*injured person*' means

"\* \* \* \* \*.

"(b) any other person, who sustains *bodily injury* while *occupying* or using the *insured motor vehicle,* with the permission of the *named insured,* or while a *pedestrian,* through being struck by the *insured motor vehicle.* "[2]

---

[2] The italicized words are in the policy. Normally, such words are italicized only to indicate that the words are expressly defined elsewhere in the policy.

Defendants point out that the policy defines "income continuation expenses" to cover loss of income caused by "bodily injury" and that "bodily injury" is defined to include death. In essence, they claim that the policy should be construed to read as follows:

"The Company will pay * * * *income continuation expenses* * * * incurred with respect to [bodily injury, sickness or disease, including death at any time resulting therefrom] * * *.

" '*income continuation expenses*' means 70% of the injured person's loss of income from work * * * caused by [bodily injury, sickness or disease, including death at any time resulting therefrom]."

■    If the policy contained only this language, defendants might well be right. However, the phrase "caused by [bodily injury, sickness or disease, including death at any time resulting therefrom]," is preceded by the clause "during a period of disability." The bracketed language quoted above modifies the phrase "during a period of disability." Defendants have concentrated their argument on the policy definition of "bodily injury" and have not addressed the significance of the fact that the policy defines income continuation expenses as a percentage of "loss of income from work *during a period of disability* caused by bodily injury * * *." (Emphasis added.) We find the emphasized phrase significant. As we said in *Perez,* "disability" is not usually used to mean death. We find nothing in the policy which suggests that the word was used there with any different meaning than we concluded it has in ORS 743.800:  inability, while living, to perform one's usual activities. *Perez v. State Farm Mutual Ins. Co., supra* at 299-300.

The policy definition of "bodily injury" to include death does not itself create an ambiguity. It clarifies the provision that the company will pay funeral expenses "incurred with respect to bodily injury." Funeral expenses are not payable for every bodily injury within the policy definition but only

when the injury is in fact a death. Similarly, the policy makes it clear that income continuation benefits are not payable on account of every bodily injury, but only those injuries which result in a period of disability. Death, although it is a bodily injury within the policy definition, does not cause a period of disability within the ordinary meaning of those words. *Accord: Griffin v. Travelers Indemnity Company,* 328 So 2d 207 (Fla App 1976). *See also, Benton v. State Farm Mutual Automobile Ins. Co.,* 295 So 2d 344 (Fla App 1974); *Svec v. Allstate Insurance Co.,* 53 Ill App 3d 1033, 369 NE2d 205 (1977); *Hamrick v. State Farm Mut. Auto. Ins. Co.,* 270 SC 176, 241 SE2d 548 (1978); *Marriot v. Pacific National Life Insurance Company,* 24 Utah 2d 182, 467 P2d 981 (1970).

■       Finally, the defendants argue that the policy language is at least ambiguous and the ambiguity should be resolved against the insurer and in favor of extending coverage, citing *Shadbolt v. Farmers Insur. Exchange,* 275 Or 407, 411, 551 P2d 478 (1976). That well-established rule is not applicable in this case. The policy before us can be read to provide the coverage for which defendants contend only if an unusual meaning is assigned to the phrase "period of disability." There is no independent basis in the policy provisions for giving those words anything other than their usual meaning. The rule of construction upon which defendants rely is applicable when a policy provision, because of the insurer's choice of language, is reasonably susceptible of more than one meaning. It is not a device for creating insurance coverage by attributing possible but unlikely meanings to the terms employed without some basis in the policy for doing so. See *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* 202 Or 277, 318-336, 273 P2d 212, 275 P2d 226 (1954) and *Jarrard v. Continental Casualty,* 250 Or 119, 127, 440 P2d 858 (1968).

In the policy before us, there is no reason to believe that "disability" would be understood by an in-

sured to have other than its ordinary meaning. When it is given that meaning, the policy is not ambiguous in the sense we have described above.

The decision of the Court of Appeals, reversing that of the trial court, is affirmed.

**TONGUE, J.,** Dissenting.

I must respectfully dissent from the opinion by the majority because it would ignore the rule well established by a long line of decisions by this court which have held that if the terms of an insurance policy are clear and unambiguous the insurance company is entitled to have it enforced as written, but that if the terms of an insurance policy are ambiguous "*any reasonable doubt*" will be resolved against the insurance company that wrote the policy and in favor of the insured. *See, e.g., Allen v. Continental Casualty Co.,* 280 Or 631, 633, 572 P2d 617 (1977); *Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 411, 551 P2d 478 (1976); *Gowans v. N.W. Pac. Indem. Co.,* 260 Or 618, 620, 489 P2d 947, 491 P2d 1178 (1971); *Farmers Mut. Ins. Co. v. Un. Pac. Ins.,* 206 Or 298, 305, 292 P2d 492 (1956); *Clark Motor Co. v. United Pac. Ins. Co.,* 172 Or 145, 149, 139 P2d 570 (1943); *Rossier v. Union Automobile Ins. Co.,* 134 Or 211, 214, 291 P 498 (1930), and *Zurich Ins. Co. v. Carlton & C.R. Co.,* 133 Or 398, 406, 291 P 349 (1930).

This is a companion case to *Perez v. State Farm Mutual Ins. Co.,* 289 Or 295, 613 P2d 32 (1980), also decided this day, in which this court properly held, "based on the language of ORS 743.800," that the provisions of that statute, in which the term "injured person" is not defined, do not provide for payment of "income continuation expenses" in the event of the death of the insured in an automobile accident. It is expressly provided by ORS 743.820, however, that insurance companies may issue policies with provisions of "more favorable benefits" than those required by ORS 743.800 and 743.805.

The insurance policy issued by this insurance company provides for the payment of "income continuation payments" to "injured persons" for "loss of income from work during a period of disability caused by *bodily injury* sustained by such person in the accident." Had the term "bodily injury" not been defined, as in *Perez,* the same result might well follow in this case, as in *Perez.* The insurance company that wrote this insurance policy, however, *expressly defined the term "bodily injury" to include death.*

Defendants, as the survivors of the insured in this case, contend that:

"By virtue of the definitions of the policy, income continuation expenses are payable 'with respect to *bodily injury* sustained by an *injured person* and caused by an accident arising out of the * * * use of a motor vehicle * * *.' '*Bodily injury*' is defined to include '* * * *bodily injury,* sickness or disease, *including death* at any time resulting therefrom.' '*Injured person*' is defined to mean 'any * * * person, who sustains *bodily injury* while occupying or using the insured motor vehicle.'

"Thus, under the declarations and definitions of the policy, an insured who is killed in an automobile accident is entitled to 'income continuation expenses' because he or she is an 'injured person' who has sustained 'bodily injury' which is defined to include 'death.' "

The majority opinion reaches a contrary conclusion based upon the fact that "the phrase 'caused by [bodily injury, sickness or disease, including death at any time resulting therefrom]' is preceded by the clause 'during a period of disability.' " The majority finds this clause to be "significant" because "disability" is not usually used to mean death. As stated in *Perez,* however, "death is undeniably the ultimate disability."

It may be that the term "disability" is not "usually" used to mean death, but usually is used with reference to "injured persons." The express terms of this insurance policy provide for the payment of

"income continuation expenses" to "injured persons," i.e., a person who has suffered "bodily injury," which is defined as "including death." It is also to be noted that the policy provides, in the alternative, that such payments shall continue until "such person is able to return to his usual occupation *or* upon the expiration of not more than 52 weeks \* \* \*," thus providing for a termination of such benefits for "bodily injury" when applied to "bodily injury" constituting "death," as that term is defined in this insurance policy.

It is obvious that at least one of the reasons why an insured may desire to purchase an insurance policy providing for disability payments — one of his "reasonable expectations" — is to provide continuing income to support his family while he is unable to work because of injury suffered in an automobile accident, subject to some terminal period as provided by the terms of the policy. According to the majority, however, if the injury suffered by the insured is such as to disable him for 50 weeks, his family would receive such payments for that entire period, but if the injury to the insured is so serious that he died on the way to the hospital, his family would receive no such payments.

This, in my opinion, would defeat one of the reasons why a person would purchase such a policy when the term "injured person" has been defined by the insurance company to include "death" — thus offering coverage broader than that required by the statute as an inducement to the purchase of such a policy. A person purchasing such a policy is entitled to a "reasonable expectation" that such a policy will, in fact, provide such broader coverage, and that benefits payable will be payable in the event of the death of the insured in an automobile accident. Indeed, we have said that an insurance policy should be construed, if not in accordance with the "reasonable expectations" of its purchaser, at least "according to its character and its beneficient purposes." *See Borglund v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957), and *Shadbolt v. Farmers Insur. Exch., supra,* at 411.

It may be conceded that an insurance company may write an insurance policy which, in clear and unambiguous terms, requires the harsh result contended by this insurance company. This insurance policy does not do so, at least by clear and unambiguous terms. On the contrary, by defining the term "bodily injury" to include death, this insurance company has sold an insurance policy that, at the least, is ambiguous.

It may even be conceded, for purposes of argument, that the interpretation of this policy by the majority is fully as reasonable as that contended for by the survivors of the insured. In *Shadbolt v. Farmers Insur. Exch., supra,* however, this court rejected the contention by an insurance company that an "ambiguity" in an insurance policy can be construed in favor of the insured only when the interpretation contended for by him is "equally as reasonable as the interpretation favorable to the insurer." On the contrary, this court held in *Shadbolt* (at 411), as in many previous cases, that:

> "* * * if there is an ambiguity in the terms of an insurance policy, *any reasonable doubt* as to the intended meaning of such terms will be resolved against the insurance company and in favor of extending coverage to the insured." (Emphasis added)

In my opinion, the least that can be said of this insurance policy is that there is a "reasonable doubt" whether the interpretation of the policy by the insurance company, as adopted by the majority, is the correct interpretation of this ambiguous policy, or whether the interpretation proposed by the survivors of the insured is the correct interpretation of those provisions of that policy. It is also my opinion that such an interpretation of the policy is a reasonable interpretation of its provisions, in view of the express definition of the term "bodily injury" to include death. It follows, in my opinion, that upon the application of the rule long recognized by this court, this ambiguity must be resolved in favor of extending coverage to the survivors of the insured in this case.

At the least, it was error by the trial court to allow the motion for summary judgment by the plaintiff insurance company, thus deciding the ambiguity in this insurance policy in favor of the insurance company as a matter of law. The majority appears to concede that this insurance policy was ambiguous. This court has previously held that when the terms of an insurance policy are ambiguous, the intention of the parties is a question of fact which should be submitted to and decided by the jury as trier of the facts. *See, e.g., May v. Chicago Insurance Co.,* 260 Or 285, 292-93, 490 P2d 150 (1971). It follows that, at the least, the decision by the Court of Appeals in this case should be reversed and the case should be remanded to the trial court for trial.

LENT, J., joins in this dissent.