Argued and submitted December 16, 1983, reversed and
remanded with instructions March 7, reconsideration denied May 11,
petition for review denied June 19, 1984 (297 Or 339)

# MORTGAGE BANCORPORATION,
*Respondent,*

*v.*

# The NEW HAMPSHIRE INSURANCE COMPANY,
*Appellant.*

## (132,612; CA A28148)

677 P2d 726

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Douglas G. Houser, Joseph A. Geary, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Dale L. Crandall, Salem, argued the cause for respondent. With him on the brief was Crothers & Crandall, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals a trial court ruling granting plaintiff's motion for summary judgment and denying defendant's cross-motion in a declaratory judgment action. The trial court held that plaintiff is entitled to recover for vandalism damage under a policy of insurance issued by defendant to plaintiff. We reverse.

The facts are not in dispute. Gary and Shireen Weddel borrowed money from plaintiff, secured by a trust deed, to complete and remodel a home in Cottage Grove in 1978. In March, 1981, plaintiff obtained a decree foreclosing the trust deed, and in April, plaintiff and the Weddels obtained the policy of insurance here at issue, which named plaintiff as the loss payee. On July 14, pursuant to a writ of execution on the foreclosure, the Weddels' interest in the property was sold at public auction to plaintiff.

After July 14, neither the Weddels nor plaintiff did any remodeling work on the dwelling. Forty-one days after the remodeling work ceased, the building was vandalized. Plaintiff made a claim under the policy for the damage, which defendant denied under the following provision of its policy:

> "We insure for all risks of physical loss to the property * * * except:
>
> "* * * * *
>
> "vandalism and malicious mischief, theft or attempted theft or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant; * * *."

The issue in this case, as posed in the trial court by defendant, is "* * * whether at the time the insured premises were vandalized said premises were 'being constructed' where all remodeling work had ceased more than 30 days prior to the loss."

The trial court in its memorandum decision stated that, because "being constructed" could be interpreted to apply to the facts, it would resolve the issue in favor of extending coverage. The rule of law applied by the trial court to interpret the contract most favorably to the insured so as to extend coverage applies only when the contract is subject to

more than one reasonable interpretation, thus creating ambiguity as to the intent of the parties. *Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980). When words of common understanding are used and the meaning is clear and subject to only a single reasonable meaning, no interpretation is necessary, and the words are to be taken in their plain, ordinary and popular sense. It is not permissible to apply a strained meaning to unambiguous language to create an ambiguity where none exists so that interpretation may be indulged to extend coverage. *Western Fire Insurance Co. v. Wallis, supra; see also Temco v. St. Paul Fire & Marine,* 273 Or 716, 719, 543 P2d 1 (1975).

 The existence of an ambiguity is a question of law, and we find none in this case. The phrase "is being constructed" describes action that is still in progress. To adopt the interpretation urged by plaintiff would be to say that a building on which construction was commenced but abandoned was, for an unlimited period of time, a building "being constructed." That clearly was not intended by the insurer and was not within the reasonable expectation of the party insured.

The only case cited to us, and we have found no other, directly dealing with the issue before us is *Crescent Co., Inc. v. Insurance Co. of N. A.,* 225 SE2d 656, 657 (SC 1976). The policy in that case provided:

> "This company (INA) shall not be liable for loss if the described building(s) had been vacant or unoccupied beyond a period of thirty (30) consecutive days immediately preceding the loss, whether or not such period commenced prior to the inception date of this coverage; but a building in process of construction shall not be deemed vacant or unoccupied * * *."

We do not think that the language difference between "being constructed" and "in the process of construction" is a material difference. The facts were similar to those now under consideration, except that the construction had ceased due to the unavailability of federal financing two years before the vandalism occurred. The South Carolina Supreme Court ruled as a matter of law that the houses were not "in process of construction." In doing so, the court rejected an argument identical to that made in the present case that the contract was ambiguous, because it did not define the term "in process

of construction" and must therefore liberally be construed in favor of the insured. The South Carolina Supreme Court reasoned:

"We do not think it can be fairly said that the vandalism coverage for a house 'in process of construction' was to run in perpetuity from the time of ground breaking regardless of the insured's actions postponing completion of the houses. The reason for charging an extra premium for vandalism and for restricting it to houses in process of construction is obvious: excessive vandalism occurs when houses or buildings are vacant. Under other policy provisions, a house vacant for more than thirty consecutive days was not covered for vandalism. The 'in process of construction' clause was obviously designed to extend coverage for houses during normal periods of construction. Without it, coverage generally would have been unavailable due to the thirty day non-occupancy provision. * * *" 225 SE2d at 658.

The difference in the length of time between cessation of construction and the occurrence of the loss for which coverage is sought is immaterial to the determination of the question on appeal. The normal course of construction having been terminated, the 30-day vacancy exclusion operates to avoid coverage.

■ The trial court erred in granting plaintiff's motion for summary judgment and in denying defendant's. Because defendant was entitled to prevail as a matter of law, it is appropriate for us to order entry of summary judgment for defendant. *Cochran v. Connell,* 53 Or App 933, 939, 632 P2d 1385, *rev den* 292 Or 109 (1981).

Reversed and remanded with instructions to enter judgment for defendant.

**ROSSMAN, J.,** dissenting.

I dissent, because in my opinion the majority has completely overlooked abundant and clearly dispositive Oregon case law. Considering the facts of this case, I am also concerned that it has reached an unjust result.

The majority relies almost exclusively on *Crescent Co., Inc. v. Insurance Co. of N. A.,* 225 SE2d 656 (SC 1976), in which the Supreme Court of South Carolina concluded that an

insurance contract covering vandalism to "a building in process of construction" did not cover unoccupied houses which were 96 percent complete and on which no work had been done for over two years. In so holding, the court rejected an argument that the phrase "in process of construction" was ambiguous. The majority here reasons that the phrases "in process of construction" and "a dwelling being constructed" are materially identical and that the circumstances in the *Crescent* case are closely analogous to those at issue here. It, therefore, concludes that our holding should mirror the one reached by the South Carolina court.

Given the abundance and clarity of relevant Oregon case law, I am extremely puzzled by the majority's long trip to South Carolina in search of authority.[1] I, instead, favor the approach taken by the trial judge, who held that plaintiff's loss was covered by the insurance policy. He applied the well-established rule that insurance contracts are to be construed liberally in favor of the insureds.

---

[1] My puzzlement becomes even greater when I consider that the factual distinctions between *Crescent Co., Inc. v. Insurance Co. of N.A.*, 225 SE2d 656 (SC 1976) and the one at bar are significant enough to render the majority's reliance suspect. *Crescent* involved a project to construct 235 houses for low income families, to be sold under federally financed programs. When the houses were about 96 percent completed, the federal financing was discontinued, making the homes unmarketable. It was undisputed that any additional investment would have been imprudent. Accordingly, all construction stopped and was not resumed. Over two years later, the homes were vandalized and coverage was denied. In the instant case, construction was suspended for 41 days — not two years. Moreover, the house was not abandoned and sitting idle when the vandalism occurred. It was simply in a transitional period following its acquisition by plaintiff at a public auction. No circumstances rendered the house unmarketable or made further investments of time and money imprudent. The original owner had simply run out of money to complete his remodeling effort and had ceased work, necessitating a foreclosure by plaintiff.

It is apparent that the facts in *Crescent* represent an extreme situation where it was easy for the court to conclude that the houses were not in process of construction. The South Carolina court recognized that:

"Under certain circumstances, the term 'in process of construction,' without further definition, may be ambiguous. In the instant appeal, the testimony of the insured's officers revealed that the work on the houses had been interrupted and that for two years the houses were left dormant. The reasons assigned for the insured's failure to complete the houses were unrelated to considerations relative to construction. Rather, they involved the unmarketability of the houses resulting from cancellation of a government sponsored financing program." 225 SE2d at 658.

The facts of our case are not nearly so clear-cut. Therefore, even if the majority's search for non-Oregon case law is justifiable, the *Crescent* holding is not dispositive.

" 'The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture. [Citations omitted.]' *Schweigert v. Beneficial Life Ins. Co.,* 204 Or 294, 301, 282 P2d 621 (1955)." *O'Neill v. Standard Insurance,* 276 Or 357, 361, 554 P2d 997 (1976).

In other words, if a term is susceptible to more than one meaning, every reasonable doubt will be resolved in favor of extending coverage. *Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980); *Allen v. Continental Casualty Co.,* 280 Or 631, 633, 572 P2d 617 (1977). The rule is especially applicable in cases involving exclusionary clauses, such as this one. *Stanford v. American Guaranty Life Ins. Co.,* 280 Or 525, 527, 571 P2d 909 (1977); *United Pac. Ins. v. Truck Ins. Exch.,* 273 Or 283, 293, 541 P2d 448 (1975).

The majority apparently concedes that, if a particular phrase like "a dwelling being constructed" is susceptible to two or more reasonable constructions, the phrase is to be construed in favor of the insured and against the insurer. However, it conveniently concludes that the only reasonable interpretation of "dwelling being constructed" is the one which avoids coverage. In this regard, the majority states:

"The existence of an ambiguity is a question of law, and we find none in this case. The phrase 'is being constructed' describes action that is still in progress. * * *" 67 Or App at 264.

I agree that the existence of an ambiguity is a question of law.

"* * * [W]ords or terms may be ambiguous, in the legal sense, when they can reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them. * * *" *Allen v. Continental Casualty Co., supra,* 280 Or at 633-34.

However, I believe that the phrase "dwelling being constructed" is ambiguous. As I read the briefs in this case and listened to the attorneys during oral argument, it became increasingly apparent that the phrase is easily susceptible to at least two reasonable constructions.

The construction advanced by the majority is a narrow one, allowing insurance companies to deny coverage under this clause unless there is active construction in progress. Such a construction raises several questions: What if severe winter weather, material shortages, or a carpenters' strike interrupt construction for over 30 days? In the absence of active construction, would insurance coverage lapse on the 31st day? The majority opinion leaves these questions unanswered.

Perhaps I could agree that the majority's construction is the only reasonable one if the insurance contract extended coverage for damage caused by vandals occurring during periods of "on-going construction activity." Instead, the contract provides that no house left vacant for over 30 days is covered unless it is a "dwelling being constructed." Plaintiff's house *was* "being constructed." Save for a relatively short delay caused by a foreclosure action and the resulting change of possession, the construction would have been more active. Therefore, given the wording of this provision, it was reasonable for plaintiff to believe that the house was insured for damage caused by vandals.

The construction advanced by plaintiff becomes even more reasonable when examined in the light of the circumstances under which the policy at issue was obtained. Following a previous episode of vandalism, the Weddels called defendant's agent to report the damage. After being informed that the policy they then owned did not have vandalism coverage, Mr. Weddel said, "Well, I have to have it. This can't happen again." Thereafter, the policy in dispute was issued, naming plaintiff as a loss payee. Clearly, the Weddels expected the insurance policy to cover losses caused by vandalism. That expectation was certainly reasonable, considering the wording of the vandalism clause and the nature of the circumstances surrounding the policy's purchase. However, even assuming that defendant honestly misunderstood the type of coverage desired by Weddel and actually believed that there would be no coverage for a loss of this type, we are still faced with a situation in which the two parties to the insurance transaction each attributed a different, but reasonable, meaning to the insurance contract. That is a legal ambiguity.

The trial judge apparently found that there was a legal ambiguity. He ruled that the construction advanced by

plaintiff was a reasonable one. Accordingly, under the clearly-established line of Oregon authority, he construed the contract in favor of coverage and against defendant insurer. In my opinion, his resolution of this case was proper. I would therefore affirm.