**Walter MYERS, Plaintiff-Appellant,**

v.

**MERRIMACK MUTUAL FIRE INSURANCE COMPANY, an Insurance Company doing business in Illinois, Defendant-Appellee.**

No. 85–1265.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1985.

Decided April 17, 1986.

Christopher P. Ryan, Strodel, Kingery & Durpree, Assoc., Peoria, Ill., for plaintiff-appellant.

James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and POSNER and EASTERBROOK, Circuit Judges.

CUMMINGS, Chief Judge.

This appeal comes to us from the district court's grant of summary judgment, 601 F.Supp. 620, in favor of the defendant Merrimack Mutual Fire Insurance Company. This diversity case raises the issue of the proper construction of certain terms in an insurance contract. For the reasons set out below, we affirm the judgment of the district court.

## I

In 1977, plaintiff Walter Myers purchased a fully occupied ten-unit apartment building in Lacon, Illinois. Subsequently he began to convert the units from oil to electric heat and charge the tenants for the fuel. As a result, the tenants began to leave. The last tenant moved out of her apartment in October or November of 1981. From that time until April 3, 1983, when the apartment building was severly gutted by fire, there were no tenants living there.

Beginning in November 1981, plaintiff began renovating the building. In addition to changing the heating system, plaintiff took steps to rewire the entire building, install drywall and insulation, and convert the building from ten rental units to nine rental units. However, these renovations proceeded somewhat slowly. Plaintiff's

job as a railroad signal worker required him to be on call at all times, and he was also busy building his Missouri retirement home. As a result, plaintiff worked on the apartment building only on weekends when he was not away from Lacon on business for the railroad or at work on his new home in Missouri. Plaintiff conceded that he would be at the apartment building only about once a month, and he was last there in late February 1983.

The apartment building during this time was deserted and unsecured. There was no water or electricity. The apartments were empty, except for some stoves and refrigerators. The last tenant had occupied the basement apartment, and when she moved out she kept the key to the door to that apartment. This tenant, who apparently was the manager of the building, had keys to several of the apartments, and left without either telling plaintiff or returning any of these keys. The basement door that led into the common areas had no lock. The door to the front porch of the building did have a lock, but the departing tenants, not plaintiff, had the keys to this lock. Moreover, plaintiff never checked to see if this lock worked. The door leading from the front porch to the first floor hallway never had a lock.

The apartment building was insured against loss from multiple perils, including fire, under a policy issued by defendant. The relevant portions of the policy for purposes of this appeal are as follows:

"15. *Suit.* No suit shall be brought on this policy unless the insured has complied with all the policy provisions....

\* \* \* \* \* \*

"17. *Vacancy, Unoccupancy and Increase of Hazard.*

(a) This Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is vacant beyond a period of sixty (60) consecutive days. 'Vacant' or 'Vacancy' means containing no contents pertaining to operations or activities customary to occupancy of the building, but a

building in process of construction shall not be deemed vacant.

(b) Permission is granted for unoccupancy.

(c) Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured."

Defendant denies liability under this policy. Although the district court discussed defendant's three reasons for denying liability, any one of them is sufficient to relieve defendant of any liability under the policy. We deal only with defendant's first contention based on the vacancy clause in the policy.

II

Defendant contends that plaintiff violated the vacancy clause contained in ¶ 17(a). Plaintiff counters that the contract is ambiguous on this issue in two respects. First, he argues that the contract fails to define "construction" in the clause in ¶ 17(a) that excepts a building "in process of construction" from the vacancy exclusion, and that his renovations to the building during the alleged period of vacancy constituted construction. Second, he maintains that ¶ 17(b), which grants permission for unoccupancy, is ambiguous when read together with ¶ 17(a) in that it is difficult for a layman like himself to distinguish between "unoccupied" and "vacant." He contends that these two ambiguities merit a finding in his favor.

We agree with plaintiff that as a general proposition any ambiguities in an insurance policy should be resolved against the insurance company. *Simmons Refining Co. v. Royal-Globe Insurance Co.,* 543 F.2d 1195, 1197 (7th Cir.1976); *United States Fire Insurance Co. v. Schnackenberg,* 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981); *Kirk v. Financial Security Life Insurance Co.,* 75 Ill.2d 367, 371, 27 Ill.Dec. 332, 389 N.E.2d 144 (1978). However, it is equally well-established that a court must

not "bend the language of a contract to create an ambiguity when none exists." *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.,* 713 F.2d 254, 258 (7th Cir.1983); *Simmons,* 543 F.2d at 1197. Moreover, insurance policies must be read as a whole and, so far as possible, giving effect to every part of the policy. *Chicago Board Options Exchange,* 713 F.2d at 257. We proceed to construe the instant policy with these precepts in mind.

■ The first ambiguity alleged by plaintiff is that what the policy gives with one hand (permission for unoccupancy in ¶ 17(b)) it takes away with the other (vacancy exclusion in ¶ 17(a)), creating an apparent nullity. However, there is no such ambiguity in our case. The terms "vacant" and "unoccupied" are not synonymous: "vacant" means entirely empty (*i.e.,* lack of animate or inanimate objects), while "unoccupied" means the lack of habitual presence of human beings (*i.e.,* lack of animate objects). This construction has been followed by Illinois courts, *Schuermann v. Dwelling-House Insurance Co.,* 161 Ill. 437, 43 N.E. 1093 (1896); *Cavin v. Charter Oak Fire Insurance Co.,* 66 Ill.App. 808, 810–811, 23 Ill.Dec. 647, 384 N.E.2d 441 (2d Dist. 1978); *Gash v. Home Insurance Co.,* 153 Ill.App. 31, 33 (1910), as well as by numerous courts in many other jurisdictions, *e.g., Jelin v. Home Insurance Co.,* 72 F.2d 326, 327 (3d Cir.1934); *Hemenway v. American Casualty Co.,* 215 F.Supp. 103, 104 (W.D.La.1963); *Boyette v. Underwriters at Lloyd's London,* 372 So.2d 592, 594 (La.App.1979); *Stortenbecker v. Pottawattamie Mutual Insurance Co.,* 191 N.W.2d 709, 712 (Iowa 1971); *Rainwater v. Maryland Casualty Co. of Baltimore,* 252 S.C. 370, 166 S.E.2d 546, 549 (1969); *Knoff v. USF & G,* 477 S.W.2d 497, 501 (Tex.Civ. App.1969); *Foley v. Sonoma County Farmers' Mutual Fire Insurance Co.,* 18 Cal.2d 232, 115 P.2d 1, 2 (1941) (Traynor, J.); *Parmeter v. Williamsburgh City Fire Insurance Co.,* 48 N.D. 530, 185 N.W. 810, 811 (1921); see also 4A Appleman, *Insurance Law and Practice* § 2833 (1969). This well-accepted definition of vacant conforms to the definition explicitly given in the contract; unoccupancy is not defined in this contract. A dwelling may thus be unoccupied but not vacant. See, *e.g., Foley,* 115 P.2d at 2. Perhaps the paradigm example of an unoccupied but not vacant house would be a fully furnished Palm Springs home owned by a Chicago resident who resides in Palm Springs for only three months during the winter. Such a home would be unoccupied for the remainder of the year, yet since the house is filled with all the inanimate objects customarily found in a home, it would not be classified as vacant.

It is a bit more difficult to imagine an unoccupied but not vacant dwelling in a rental context. Most apartments (including those in the instant case) are rented unfurnished, and so when the animate objects (*i.e.,* the tenants) leave, the inanimate objects tend to follow. Thus, if one tenant leaves a month before the new tenant moves in, the apartment (though of course not the entire building) might well be classified as vacant and not merely unoccupied. Moreover, a tenant in a rental apartment, as opposed to an owner of a home, is less likely to leave the unit for a sufficient length of time[1] for the apartment to be classified as unoccupied, since the tenant must still pay rent during his absence. It would have been preferable for defendant to define both of these terms in the contract and how they interact. Nevertheless, the presence of these two terms in the contract does not create an ambiguity; it merely means that a grant of permission for unoccupancy but not vacancy appears to be less valuable to the policyholder when the insured dwelling is an apartment building with unfurnished apartments.

---

1. A dwelling is not "unoccupied" when the owners are only temporarily absent for a reasonable time, since if the absence is temporary they are still "habitually present" in the dwelling. *Foley,* 115 P.2d at 2 (not unoccupied where temporary thirteen-day absence); *Hemenway,* 215 F.Supp. at 104 (not unoccupied where temporary two-week absence).

Given this distinction between the terms vacant and unoccupied, there can be no doubt that the apartment building in the instant case was vacant and not merely unoccupied. These apartments were entirely empty for approximately eighteen months, lacking both tenants and inanimate objects. Plaintiff at oral argument noted that there were some stoves and refrigerators in the apartments, but such minimal items, without more, do not prevent us from concluding that the building was vacant. *Dunton v. Connecticut Fire Insurance Co.*, 371 F.2d 329, 330 (7th Cir.1967) ("It is well-settled that the use of a building to store a few articles does not show that the building is still occupied."); *Jelin*, 72 F.2d at 327 (fifteen-room house that contained a few items (an old brass bed, old straw mattress, and a chair) and that no one had lived in for several months, is vacant).

Plaintiff also contends that even if the building is vacant, the building was "in process of construction" due to his renovations. At the least, he argues that "construction" is an ambiguous term that includes renovations. We disagree. Several state courts have held that in an insurance policy, the term construction does not include repairs, maintenance, reconstruction, renovation and the like to an already existing structure. *Travelers Indemnity Co. v. Wilkes County*, 102 Ga.App. 362, 116 S.E.2d 314, 317 (1960); *Crescent Co. of Spartenburg, Inc. v. Insurance Co. of North America*, 266 S.C. 598, 225 S.E.2d 656, 658 (1976). Many state courts have made this same distinction in defining the term construction in other contexts. *Commonwealth v. Brown*, 391 Mass. 157, 460 N.E.2d 606, 609 (1984); *Muirhead v. Pilot Properties, Inc.*, 258 So.2d 232, 233 (Miss. 1972); *Commonwealth v. McHugh*, 406 Pa. 566, 178 A.2d 556, 558 (1962); *People v. NY Central RR Co.*, 397 Ill. 247, 250, 23 N.E.2d 302 (1947); *Julius v. Lenz*, 215 Minn. 106, 9 N.W.2d 255, 257 (1943); *People v. Olsen*, 32 N.Y.S.2d 63, 65, 66 (1941). Moreover, this distinction accords with the probable purpose of this clause. Such a clause balances a willingness to extend coverage through the construction period with a desire to guard against excessive vandalism that occurs when a dwelling is vacant, *Crescent*, 255 S.E.2d at 658, and the interpretation urged by plaintiff would intolerably alter this balance by greatly extending the "construction" period to include any time during which some repairs or renovations are being made. The "construction" period cannot go on forever. See *Rogers v. Aetna Casualty & Surety Co.*, 601 F.2d 840, 844 (5thCir.1979).

Since we hold that plaintiff was in violation of the policy's vacancy exclusion in ¶ 17(a), we need not reach the other grounds on which defendant urges a denial of liability. The district court's grant of summary judgment in favor of defendant is affirmed.