486 S.E.2d 263

**Herbert P. WIEDEMANN, Appellant,**

v.

**TOWN OF HILTON HEAD ISLAND,**
**South Carolina, Respondent.**

**No. 2661.**

Court of Appeals of South Carolina.

Heard April 8, 1997.

Decided April 21, 1997.

Rehearing Denied May 22, 1997.

---

4. South Carolina's joint custody statute, S.C.Code Ann. § 20–7–420(42) (Supp.1996), was not in effect at the time of the hearing.

Herbert P. Wiedemann, Hilton Head Island, pro se.

Curtis L. Coltrane, Hilton Head Island, for Respondent.

ANDERSON, Judge.

Herbert P. Wiedemann brought this action alleging a workshop of the Hilton Head Island Town Council held 45 miles outside the boundaries of the municipality violated the open meeting provision of the South Carolina Freedom of Information Act (FOIA), S.C.Code Ann. §§ 30–4–10 to –110 (1991 & Supp.1996). The master granted summary judgment for the Town of Hilton Head. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The Town Council holds its regular meetings at the Town Hall of Hilton Head Island. On December 1, 2, and 3, 1995, the Mayor, the Town Council members, the Town Manager, and the Assistant Town Manager participated in a Town Council Workshop at the Dataw Island Club, Dataw Island, South Carolina. A major purpose of the meetings as stated in the workshop agenda was to facilitate the leadership and goal-setting capabilities of the council members. Dataw Island is a private, residential community located in Beaufort County approximately 45 miles from the municipal limits of the Town of Hilton Head. Access to the community is restricted and visitors must obtain passes from a guard at the security gate to enter.

On November 27, 1995, *The Island Packet,* a Hilton Head newspaper, advertised the Town Council would be holding the three-day retreat the following weekend. Wiedemann did not find a notice of the meeting on the Town Hall's official bulletin board or anywhere inside the Town Hall. Wiedemann contacted the Town's legal director, who placed Wiedemann's name on the guest list for admission to the retreat.

On December 1, 1995, Wiedemann obtained a pass from the Dataw Island security guard and proceeded to the Dataw Island Club. The Assistant Town Manager met him on the porch of the Club and escorted him to a room where the meeting was already in progress. There was no space for Wiedemann to sit at the conference table, and he had to sit on a chair that was placed in an aisle near the entrance. A reporter from *The Island Packet* sat with him. No other members of the public or press were present. Wiedemann states his attendance "was about as popular as ants at a picnic."

Wiedemann did not attend the meeting held on December 2, 1995. However, he did return for the meeting held on December 3, 1995. A different reporter was present, but no other members of the press or the public attended the meeting. According to the Assistant Town Manager, Charles O. Hoelle, Jr., the meeting room was large enough to accommodate all persons in attendance, and a larger room was available if more members of the public had attended the workshop.

Wiedemann brought this action for injunctive relief and a declaratory judgment on January 8, 1996, contending the Town of Hilton Head violated the FOIA by holding the council workshop at Dataw Island. He sought, *inter alia,* a declaratory judgment that the FOIA prohibits the Town Council "from meeting (i) at Dataw Island or at any other location so far from the geographic boundaries of [the Town of Hilton Head] as to make attendance by the relevant public impractical and (ii) at Dataw Island or any other gated community, or at any private club, including the Dataw Island Club, where public access is by sufferance rather than by right." [1] During discovery, Wiedemann admitted he knew of no person who claimed to have been prevented from attending the meetings at Dataw Island.

The Town of Hilton Head filed a motion to dismiss under Rule 12(b)(6), SCRCP for failure to state facts sufficient to constitute a cause of action. Wiedemann moved for summary judgment pursuant to Rule 56, SCRCP. The master denied Wiedemann's motion for summary judgment. The master converted the Town's motion to dismiss into a motion for summary judgment and then granted the motion. Wiedemann appeals.

## ISSUE

Does an open, public meeting of a municipal council held outside the municipal limits violate S.C.Code Ann. § 30–4–60 (1991) of the FOIA, which requires·meetings of public bodies to be open to the public?

## STANDARD OF REVIEW

Summary judgment is appropriate only when it is clear there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. ˙ *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995). In ruling on a

---

**1.** Wiedemann's second and third causes of action sought a mandatory injunction requiring the Town Council to post written notice of its public meetings, including workshops, on a bulletin board at its principal office, and a mandatory injunction requiring the Town Council to keep written minutes of all its public meetings, including workshops. The only issue on appeal is the master's disposition of the first cause of action regarding the open meeting requirement.

motion for summary judgment, the trial court must view the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994).

Our Supreme Court further elucidates:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* S.C.R.C.P. 56(c) (1989). *LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711 (1988). *Crescent Company of Spartanburg, Inc. v. Insurance Company of North America, supra* [266 S.C. 598, 225 S.E.2d 656 (1976)].

\* \* \* \*

A party seeking summary judgment has the burden of clearly establishing by the record properly before the Court the absence of a triable issue of fact. *See Tom Jenkins Realty, Inc. v. Hilton,* 278 S.C. 624, 300 S.E.2d 594 (1983). All inferences from facts in the record must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Eagle Construction Co. v. Richland Construction Company, Inc.,* 264 S.C. 71, 212 S.E.2d 580 (1975). A party who fails to show the absence of a genuine issue of material fact is not entitled to summary judgment even though his adversary does not come forward with opposing materials. *Title Insurance Co. of Minnesota v. Christian,* 267 S.C. 71, 226 S.E.2d 240 (1976).

*Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 421–22, 392 S.E.2d 460, 462 (1990).

### LAW/ANALYSIS

■ Wiedemann argues the workshop held at Dataw Island, a private, gated community 45 miles from the Town's municipal limits, violated the open meeting requirement of the FOIA because the distance and the restricted access to the meeting site at Dataw Island created an unreasonable barrier to public attendance. We disagree.

The Town is a public body as defined by S.C.Code Ann. § 30–4–20(a) (1991). As a public body, the Town must comply with the FOIA's open meeting requirement in S.C.Code Ann. § 30–4–60 (1991), which provides, "Every meeting of all public bodies shall be open to the public unless closed pursuant to § 30–4–70 of this chapter." [2] For purposes of the FOIA, a "meeting" is defined as "the convening of a quorum of the constituent membership of a public body, whether corporal or by means of electronic equipment, to discuss or act upon a matter over which the public body has supervision, control, jurisdiction or advisory power." S.C.Code Ann. § 30–4–20(d) (1976). The Town did not contest the workshop was a meeting for purposes of the FOIA.

The meetings of municipal councils are governed by S.C.Code Ann. § 5–7–250 (1976), which states in pertinent part, "The council, after public notice[,] shall meet regularly at least once in every month at such times and places as the council may prescribe by rule." S.C.Code Ann. § 5–7–250(a) (1976).

Neither the statute governing municipal meetings, § 5–7–250, nor the statute requiring meetings of public bodies to be open, § 30–4–60, specifies where meetings of a municipal council must be held. In contrast, we note the South Carolina legislature has mandated that school board meetings be held "at the school district office or at such other place within the district that the board deems convenient and suitable." S.C.Code Ann. § 59–1–340 (1990).

What restrictions may be invoked on the location of municipal meetings pursuant to the FOIA is a novel question in South Carolina, and our research reveals a paucity of cases on this topic from other jurisdictions. We have previously noted, however, that the legislatures of every state have enacted

2. S.C.Code Ann. § 30–4–70(a) (1991) allows a public body to hold a closed meeting in order to discuss the following: (1) employment matters; (2) negotiations incident to proposed contractual arrangements and the proposed sale or purchase of property, or the receipt of legal advice; (3) the development of security personnel or devices; (4) investigative proceedings regarding allegations of criminal misconduct; and (5) the proposed location or the provision of services to encourage the location or expansion of industries or other businesses in the area served by the public body. The workshop held at Dataw Island does not fall within any of the enumerated exceptions.

open meeting laws in some form or another, and because no two acts are the same, and because each case differs factually from the others, decisions from other states construing their statutes may be of limited assistance. *See Herald Publ'g Co. v. Barnwell,* 291 S.C. 4, 351 S.E.2d 878 (Ct.App.1986). Therefore, when deciding how to interpret South Carolina's open meeting statute, we look to the statement of legislative intent expressed in S.C.Code Ann. § 30–4–15 (1991):

"The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy. Toward this end, *provisions of this chapter must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings.*" (Emphasis added.)

As stated above, our FOIA guarantees public access at a minimum cost or delay. This statutory right *cannot* be emasculated by a governmental entity by either distance, cost, or delay. The quiddity of South Carolina's FOIA is openness of meetings of public bodies undergirded by convenience and accessibility to the general public. The General Assembly has expressly disavowed clandestine meetings of governmental entities. This salutary and efficacious safeguard has received the imprimatur and approbation of our General Assembly in § 30–4–15.

Wiedemann cites *Rhea v. School Board of Alachua County,* 636 So.2d 1383 (Fla.Dist.Ct.App.1994), to support his contention the workshop at Dataw Island violated the FOIA's open meeting requirement and the directive to afford access at "a minimum cost or delay" because the public did not have a "reasonable opportunity to attend" the out-of-town workshop. In *Rhea,* the Alachua County School Board scheduled a workshop for its members at a hotel in Orlando since all of the members would already be there to attend a semi-annual convention of the Florida School Boards Association. *Id.* at 1384. The District Court of Appeal of Florida concluded the Board's workshop held in another county more than 100 miles

from its headquarters did not give citizens a reasonable opportunity to attend and therefore violated the state's Sunshine Law. *Id.* at 1386.

In *Rhea,* the court stated, "The mere fact that a meeting is held in a public room does not make it public within the meaning of the Sunshine Law. *For a meeting to be 'public,' it is essential that the public be given advance notice and a reasonable opportunity to attend."* *Id.* at 1384–85 (citation and footnote omitted) (emphasis added). The court declined to adopt a bright line test based on distance when determining whether a meeting was open. Rather, it adopted a balancing of interests test. The interest of the public in having a reasonable opportunity to attend the meeting must be balanced against the governmental entity's need to conduct the meeting at a distant site:

> Rhea urges this court to fashion an absolute rule which would prohibit any Board workshop from being held under any circumstances at a site more than 100 miles from the usual meeting place. We can envision circumstances which would warrant the conduct of a workshop beyond the county boundaries and perhaps even more than 100 miles from the usual meeting place. *Thus, we decline to adopt a bright line test which would resolve every dispute on this issue. Rather, we hold that a balancing of interests test is the most appropriate method by which to determine which interest predominates in a given case. The interests of the public in having a reasonable opportunity to attend a Board workshop must be balanced against the Board's need to conduct a workshop at a site beyond the county boundaries.* A significant and obvious factor to be considered in the weighing process is the extent of the distance from the usual meeting place to the out-of-county workshop, an issue which both parties to this cause addressed extensively. We conclude that the greater the distance, the heavier the burden is upon the Board to demonstrate a need for the alternate site. It follows that the shorter the distance, the lighter the burden is upon the Board to justify the out-of-county site.
>
> Another factor to be considered is any good faith action by the Board to minimize the expense and inconvenience of the public in attending an out-of-county workshop. For

example, an offer by the Board to provide transportation for the public at the Board's expense[ ] would serve to mitigate the disadvantage to the public, thus enhancing the weight of the Board's position in the matter.

We would ordinarily expect a Board workshop to be held within the county boundaries for reasons of sound logic and common sense. However, when a perceived need to do otherwise arises, the Board must apply the balancing of interests test.

The foregoing factors are not intended to be all-inclusive. Any consideration of the balancing process must focus upon the issue of whether the Board's need for a workshop at a particular geographical site is outweighed by the resulting barriers which tend to prevent public attendance. Thus, any factor or circumstance which impacts thereon must be considered on a case-by-case basis.

*Id.* at 1385–86 (emphasis added).

In contrast to the balancing test applied in *Rhea, supra,* we are aware of authority interpreting an open meeting provision as strictly limiting the meetings of a town council to the town boundaries. In *Town of Paradise Valley v. Acker,* 100 Ariz. 62, 411 P.2d 168 (1966), the Town of Paradise Valley enacted an ordinance during a meeting that was held outside the town limits. The Ackers alleged the holding of a meeting outside the town limits was improper and that all actions taken were therefore void. The Town argued there was no requirement that council meetings be held within the municipal limits, as the only directive on the matter was a statute which provided, "The proceedings of the common council shall be public." *Id.* 411 P.2d at 169 (quoting section 9–234, subsection C, of the Arizona Revised Statutes).

The Supreme Court of Arizona stated the statutory language that the proceedings of the municipality shall·be public "means public to the citizenry directly concerned, in this case public to the citizens of Paradise Valley, Arizona, without the necessity of their leaving the incorporated limits of the municipality to attend a town council meeting." *Id.* at 169. After noting the absence of precedent from other jurisdictions on this subject, the court, relying on *American Jurisprudence,* concluded that in the absence of statutory authorization, a

municipal council has no authority to hold meetings outside the municipal limits, and all acts and proceedings at such a meeting are void. *Id.* (citing 37 Am.Jur. *Municipal Corporations* § 54).

After reviewing the provisions of our FOIA, we decline to follow the statutory interpretation applied in *Town of Paradise Valley, supra,* in which the court reasoned the town council must meet within the town limits in the absence of express statutory authorization. We base this decision in large part on the distinguishing fact that in South Carolina, our legislature has expressly restricted the location for meetings of school boards in § 59-1-340; however, so far it has not seen fit to enact a similar provision governing municipal councils. We believe that if the legislature had intended to impose a similar restriction on the meetings of municipalities, it would have done so by statute. *See, e.g., Redmond v. Lexington County Sch. Dist. No. Four,* 314 S.C. 431, 445 S.E.2d 441 (1994) (appellate court must apply the law as it currently exists).

■ Consequently, we hold an open, public meeting of a municipal council is not violative of our FOIA merely because it is held outside the municipal limits. Instead, we believe a balancing test similar to that discussed in *Rhea, supra,* should be applied. The standard we adopt is that the interests of the municipality in conducting the meeting outside the municipal limits shall be weighed against the cost or delay to the public. We agree with the *Rhea* court that the articulation of a bright line test is not in the best interest of the public or a governmental entity. Rather, the "time and place" scenario undertaken by the governmental entity beyond its municipal limits must be imbued with vigilant circumspection.

We hasten to add that because there is not a *per se* violation of the FOIA by a meeting held outside the municipal limits does not lessen the necessity of the application of strict parameters as to distance and place. Leaving the boundaries of the municipality to conduct business by a municipal council triggers the rule of "guarded elasticity" as to distance and site. Discretion is inherent in such activity, but limitations are statutorily imposed by the "minimum cost or delay" provision. Any strict limitation regarding the distance to the chosen

location, however, is best left to the discretion of our General Assembly.

Applying the balancing test in the case *sub judice*, we must ask, is the travel activity of Wiedemann a *de minimus* odyssey or is it an unreasonable bureaucratic barrier? Wiedemann attended two of the three meetings at Dataw Island; reporters from *The Island Packet*, *The Carolina Morning News*, and WJWJ–TV were also in attendance at various times during the three-day period. Although Wiedemann contends the distance to the workshop created an unreasonable barrier to attendance, Wiedemann has admitted he knows of no member of the public who was prevented from attending. We note that the Town made arrangements to admit any interested citizens, and the record contains no indication that anyone was denied access upon request. Further, although Wiedemann complains he had to sit in the aisle with a reporter, a larger room was available if it had been needed according to the affidavit of the Assistant Town Manager.[3]

We hold the Town of Hilton Head did not violate the FOIA by holding the council workshop at Dataw Island, 45 miles outside the municipal limits. Meetings held outside the municipal limits will be scrutinized by a "time and place analysis" as juxtaposed to inconvenience, cost, or delay thrust upon the general public. The performance of public business as reviewed by our FOIA mandates pristine conduct by the governmental entity, and a violation of § 30–4–60 by a governmental entity will not be countenanced by this Court.

## *CONCLUSION*

We conclude an open, public meeting of a municipal council does not violate the open meeting requirement in § 30–4–60 of the FOIA merely because it is held outside the boundaries of the municipality. Rather, in applying the statutory directive of § 30–4–15 to minimize the cost or delay to citizens seeking access to public meetings, the court shall apply a balancing

---

**3.** At least one jurisdiction has held that "if a meeting is [convened] at such an inconvenient location or in a room so small as to make it inaccessible for public attendance, the meeting might effectively be considered improperly closed...." *Stevens v. City of Hutchinson*, 11 Kan.App.2d 290, 292, 726 P.2d 279 (1986).

test which balances the interests of the governmental body in holding an out-of-town meeting against the cost or delay to the public on a case-by-case basis. Any further limitation on the situs for the meetings of municipal councils is best left to the discretion of the South Carolina General Assembly. Since we do not believe the location of the workshop and the procedure for admittance created an undue burden on the public in the case now before us, we affirm the decision of the master granting summary judgment to the Town of Hilton Head.

**AFFIRMED.**

HOWELL, C.J., and GOOLSBY, J., concur.