14706

ELLIS v. METROPOLITAN CASUALTY INS. CO. OF N. Y.

(197 S. E., 510)

Mr. *W. Marshall Bridges,* for appellant,

*Messrs. Y. C. Weathersbee* and *H. Klugh Purdy,* for respondent,

June 9, 1938.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On April 10, 1937, the appellant, through W. C. Preacher, its local agent at Ridgeland, issued to the respondent a standard automobile insurance policy, insuring him against liability for damages, and including damages for care, maintenance and loss of services, because of bodily injury, including death, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance, and use of the motor vehicle described.

But by a subsequent clause of the contract, under the head of "Exclusions," the policy excluded any obligation of the company for bodily injury suffered by any employee of the

assured while engaged in the business of the assured, other than domestic employment.

The case at bar involves the application of the doctrine of waiver or estoppel, and arose out of the following facts, as to which the respondent and the appellant are in substantial agreement:

On April 12, 1937, one Alex Pinckney, an employee of the respondent, but not engaged in domestic employment, while riding on a Chevrolet truck of the respondent, which was described in the policy contract, fell from the truck, breaking his leg.

The accident occurred about two o'clock on the afternoon of April 12, 1937, and the injured man was immediately taken to the local hospital at Ridgeland. Later in the afternoon of the same day the respondent learned of the accident to his employee, and was informed that Pinckney had been taken to the hospital for emergency treatment, and that the hospital authorities were awaiting his arrival for further instructions. Upon learning this, the respondent immediately reported the accident to Mr. Preacher, the local agent of the appellant, and told him that the injured man was in the hospital for emergency treatment, and that the accident would result in a claim against the appellant. The agent instructed him to obtain all the facts with reference to the accident, so that he (the agent) could forward a report of it to the appellant on the mail leaving Ridgeland that afternoon. The facts were obtained, and the report was mailed that afternoon. Neither the respondent nor Mr. Preacher, the agent, recalled definitely whether it appeared in that report that the injured man was actually an employee of the respondent, but both of them believed at that time that the risk was covered by the policy, and that the appellant was liable. The respondent testified that when the policy was issued to him by the local agent he made the statement to Mr. Preacher, "that it did not matter so much to me if my truck was destroyed, but if it did injure any one I wanted pro-

tection, then Mr. Preacher referred to that paragraph which refers to bodily injury, where it says I was protected for bodily injury to any person or persons whoever may be hurt."

When the report was received at the Columbia office of the appellant, Mr. Preacher was called on the telephone by that office and asked if Pinckney was an employee of the respondent. Apparently Mr. Preacher was uncertain himself of this fact, and he immediately made inquiry at the respondent's place of business, and learned from an employee there that the injured man was an employee of the respondent. He thereupon transmitted this information to the Columbia office, together with the further fact that the injured man was in the hospital, and he expressed the belief that an agent of appellant from the Columbia office came to Ridgeland, and that he and this agent went to see the respondent, but he could not recall the circumstances.

Later it became necessary to amputate Pinckney's leg, and it was suggested by his family that a surgeon be called from Savannah to assist the local surgeon in this operation. The respondent discussed this with Mr. Preacher, and asked him who was going in pay the expense. Mr. Preacher approved of the entire procedure, suggested the name of a Savannah surgeon, and stated in substance that efficient treatment of the injured man would result in reducing the ultimate claim against the appellant.

The respondent was not advised until three weeks had elapsed, that the appellant would deny liability. During this interim, and about two weeks after the accident, an adjuster, representing the appellant, went to Ridgeland and requested the respondent to obtain the presence of all necessary witnesses, so that their statements might be obtained. This was done. While in Ridgeland the adjuster expressed his entire satisfaction with the efficient manner in which the local agent and the appellant had handled the whole matter, and he told the respondent that further instructions would be received

by him from the appellant. While in Ridgeland the adjuster went to the hospital with the local agent and interviewed the injured man.

It is admitted without question that the obligation incurred by the respondent in caring for his injured employee amounted to $800.00, all of which obligation was incurred before any denial of liability had been made by the appellant, and while the assured was relying upon the belief that the policy covered the liability. He says that he consulted the local agent every step of the way with reference to incurring the hospital and medical bills, and that he was led to believe and to understand by Mr. Preacher that these bills would be paid by the appellant. As already stated, the local agent and the Columbia office of the appellant knew within two days after the accident that the injured man was an employee of the respondent—not engaged in domestic employment—and as such employee that any injury to him would not be covered by the policy, but neither Mr. Preacher nor the appellant notified the respondent of this fact, nor was he advised of it until three weeks had passed, when the appellant denied liability.

Mr. Preacher testified in part as follows:

"Q. Now, in connection with what the adjuster said with reference to your conduct, did that have reference to the preparation of the report, or to the placing of the man in the hospital, or to what? A. Well, he talked about the way it was handled, that is, the whole thing all the way through.

"Q. That it met with his approval? A. Yes, sir."

In overruling the motion for a directed verdict made by the appellant, the trial Judge held that there was evidence to show that the appellant had estopped itself to deny liability, and had waived the exclusion provision of the contract. He stated: "If Mr. Preacher or this adjuster of the Home Office had written Mr. Ellis that they were not liable, he probably could have protected himself, or done what was

necessary, but they permitted him to expend $800.00 before he knew they were not going to pay this claim."

The trial resulted in a verdict for the respondent for the full amount.

The sole question raised by the appeal is whether the appellant has estopped itself from a denial of liability by its conduct, and thereby has precluded insistence upon the policy provision excluding employees not engaged in domestic service.

While there are distinguishing features between waiver and estoppel, waiver belongs to the family of estoppel, and the terms are frequently used as meaning the same thing in the law of insurance contracts. *Fender v. New York Life Ins. Co.,* 158 S. C., 331, 155 S. E., 577. While these terms are often loosely used interchangeably in the law of insurance, they are not convertible terms. A waiver is an intentional relinquishment of a known right, while the essential elements of estoppel are the ignorance of the party who invokes the estoppel, representations, or conduct of the party estopped, which mislead, and an innocent and deleterious change of position in reliance upon such representations or conduct. *Harvey v. Philadelphia Life Ins. Co.,* 131 S. C., 403, 127 S. E., 836.

It has been held that, where the elements of estoppel exist, an insurer may be precluded from asserting that the loss is not within the terms of the policy. 36 C. J., § 39, page 1074.

Although the question is not free from difficulty, it seems clear, if the appellant was promptly made aware of the fact, that the risk was not covered by the policy, by reason of the injured person's being an employee of the respondent excluded by the policy, and knowing all the while as it did, that the respondent believed that the risk was within the policy coverage, and was incurring obligations on the strength of that belief, it should have acted expeditiously in denying liability; the respondent should have been advised

that the company proposed to insist upon the letter of its contract; it should have acted consistently with that purpose. If this had been done, the respondent would not have been misled.

No doubt the appellant acted in good faith, but bad faith is not always necessary to estoppel.

We are of the opinion that the testimony, considered as a whole, properly made an issue for the jury upon the question of estoppel, and that the trial Judge committed no error in overruling the motion for a directed verdict.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.