LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

WESTPORT INSURANCE CORPORATION, Defendant.

C.A. No. 2:07–CV–3729.

United States District Court, D. South Carolina, Charleston Division.

June 29, 2009.

See also 657 F.Supp.2d 683.

Morgan S. Templeton, William Wharton Watkins, Jr., Elmore and Wall, Charleston, SC, for Plaintiff.

Cravens Duval Ravenel, Baker Ravenel and Bender, Columbia, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on Defendant Westport Insurance Corporation's ("Westport" or "Defendant") Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Plaintiff Liberty Mutual Insurance Company's ("Liberty Mutual" or "Plaintiff") Motion for a Jury Trial. For the reasons set forth herein, Defendant's Motion is granted, rendering Plaintiff's Motion moot.

## BACKGROUND

This matter is factually related to another matter in which this Court previously issued an Order, *Murphy v. Jefferson Pilot Communications Co.,* 657 F.Supp.2d 683 (D.S.C.2008). The case involved the actions of Donald Feldman ("Feldman"), formerly the "Assistant VP News" for Jefferson Pilot and news director for WCSC, whose bizarre behavior included making untrue allegations about attorney Eliza-

beth Murphy ("Murphy") in what appears to have been an attempt to impress Sandra Senn ("Senn"), another local attorney and panelist on one of WCSC's talk shows, who did not get along with Murphy. Feldman claimed that he had been on an airplane with Murphy, and made accusations about Murphy's behavior on the airplane. Feldman also printed fraudulent letters of correspondence between himself and Murphy to show to Senn to make it appear as if he was pursuing a lawsuit against Murphy on behalf of WCSC. Murphy discovered that Feldman had been making these allegations about her, and brought an action against Feldman, Jefferson Pilot, and WCSC for defamation and intentional infliction of emotional distress.

The initial jury trial took eight days. At the end of the trial, the trial judge granted Jefferson Pilot and WCSC's Motion for a directed verdict. After deliberating, the jury returned a $9 million verdict against Feldman. Originally, Liberty Mutual had retained attorney Patrick Higgins to represent Feldman, but Feldman had retained his own attorney, and specifically informed Liberty Mutual that he waived any insurance coverage and had no desire to cooperate with Liberty Mutual. After the verdict was returned, Feldman filed for Chapter 7 bankruptcy.

Murphy appealed the trial court's grant of a directed verdict as to Jefferson Pilot and WCSC. The South Carolina Court of Appeals reversed and remanded the matter for a retrial. At the end of this second trial, the jury found that Jefferson Pilot and WCSC were responsible for Feldman's behavior, and were liable for $4 million in damages.

In February 2008, after being assigned by Feldman any claims which he may have had against WCSC and Jefferson Pilot, Murphy brought an action in federal court seeking to enforce the original $9 million judgment against Feldman obtained in the first trial. However, this Court held that the claim against WCSC was barred by the applicable three-year statute of limitations, that no valid claim against WCSC for breach of contract existed, and that the issue of liability was foreclosed by res judicata.

The present matter involves a dispute between two insurance companies. Plaintiff issued an insurance policy to Jefferson Pilot covering the time period in question, a commercial general liability policy ("CGL"), which had a limit of $1,000,000.00 per occurrence and $3,000,000.00 overall. Plaintiff issued a second insurance policy to Jefferson Pilot during the time period in question which was an umbrella excess liability policy with a $10,000,000.00 limit per occurrence.

For its part, Defendant also issued an insurance policy to Jefferson Pilot during the time period in question providing for media and personal injury liability coverage with a $10,000,000.00 limit. This policy provided that Defendant would cover any sort of defamation or intentional infliction of emotional distress:

> committed in the acquisition, researching, filming, videotaping, preparation, utterance or dissemination of "matter" first published, printed, produced, distributed, exhibited, displayed, broadcast, telecast, cablecast, "advertised" or contracted for by the insured or with the insured's permission, or with the permission of the insured's "subsidiary", during the policy period.

Defendant's policy defines "matter" as "words, sounds, or images, made or to be made available to a mass public audience through the insured's publications, broadcasts, films or other forms of mass media."

After the underlying events of defamation and outrage occurred, and the initial lawsuit had been commenced in state court, John D. Nesbitt ("Nesbitt"), a

claims specialist for Defendant, was assigned to the matter. Initially, Defendant took no coverage position, but in notes made on May 2, 2001, Nesbitt wrote that his initial thought was that "the insured would be covered b/c it was printed and distributed by the insured/its employee. There's no language requiring it to be over the airwaves in this policy." On July 2, 2001, Plaintiff agreed to defend the suit on behalf of Jefferson Pilot, and also to represent any possible interest of Defendant in the case.

On November 29, 2001, Nesbitt sent a letter to Jefferson Pilot reserving rights, essentially claiming that Defendant did not believe that it owed Jefferson Pilot a defense and that Feldman was not an insured. However, Nesbitt's reason for this was not that the defamation and infliction of emotional distress was not broadcast in a certain medium, but rather that Feldman was acting outside the course of his employment when these actions occurred.

Plaintiff's claim specialist working on the case was Patrick Crotty ("Crotty"). In correspondence, Crotty claims that Nesbitt acknowledged that Defendant's policy would provide insurance coverage for the underlying acts. Crotty's understanding at the time, then, was that the first $1,000,000.00 of liability to Jefferson Pilot would be insured by Plaintiff, but that the next $10,000,000.00 in liability would be insured by Defendant. Nesbitt appears to have been under a similar understanding, as he sent Crotty a letter dated May 15, 2003, asserting that he understood that settling might be a possibility, but stating that:

> This letter will remind you of your obligation to settle a claim within your policy limits of liability and not act in a way to the detriment of Westport or the insured. Westport reserves all rights under the policy and at law to make an indemnity claim against Liberty Mutual

in the event that it fails to resolve this matter within the underlying layer of coverage, unnecessarily exposing Westport and the insured to additional liability.

(Pl.'s Ex. L.) While he did not explicitly state that Defendant would be responsible for insuring any liability beyond $1,000,000.00, Nesbitt clearly did not believe that Defendant was completely insulated from its coverage obligations under the policy.

On July 11, 2005, Crotty mailed Nesbitt a letter which purported to confirm a "layering agreement:"

> I also wanted to confirm that we are in agreement regarding the layers of insurance:
>
> ### Layer # 1
>
> Liberty Mutual Insurance Company— Primary General Liability Policy—Combined Single Limit of $1,000,000
>
> ### Layer # 2
>
> Westport Insurance Corporation—Primary Media Liability Policy, but excess over Layer # 1. $10,000,000 limit with a $100,000 self-insured retention If a judgment were to exceed $11,000,000, we will have to discuss any and all other excess policies for Jefferson Pilot Communications. However, I simply find it hard to believe this case ever exceeds $11,000,000.

(Pl.'s Ex. M.) Nesbitt acknowledged in deposition testimony that he never gave any indication of any opposition to this layering scheme for coverage obligations. Both parties proceeded under the assumption that this was the scheme in place.

However, in 2006, Nesbitt was transferred within Defendant's organization, and was no longer responsible for the matter at hand. In January 2007, Stacie Gram ("Gram") was appointed as the new claims representative in this case. An at-

torney was retained to investigate the matter on behalf of Defendant and examine Defendant's exposure. When Gram obtained the policy in question and read through it carefully, she noted the language surrounding the "matter" requirement and specifically asked the attorney to look into it. On June 26, 2007, the attorney determined that due to the "matter" requirement, Defendant owed Jefferson Pilot no coverage for liability arising out of Feldman's actions. Then, on July 6, Defendant notified Jefferson Pilot that it was denying any potential claim for coverage. The reasoning given by Defendant was that Feldman's defamation and infliction of emotional distress had nothing to do with the "matter" his employer generally used to reach a mass audience, and therefore was not covered by the policy.

Plaintiff filed the present action in this Court on November 14, 2007. It asserts five causes of action: (1) a declaratory judgment that Defendant's decision to refuse to extend coverage to Jefferson Pilot was improper; (2) Defendant waived its right to refuse coverage by representing that Jefferson Pilot was insured in this matter, and is stopped from now denying coverage; (3) and (4) that Plaintiff is entitled to legal and equitable subrogation in this matter; and (5) that Defendant is liable for the breach of an implied contract. This matter was originally assigned to Judge C. Weston Houck, before being reassigned on January 7, 2009. Shortly before being reassigned, Defendant had filed a Motion for Summary Judgment on all five of Plaintiff's claims for relief, to which Plaintiff filed a Response in Opposition.

### STANDARD OF REVIEW

To grant a party's motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The Court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

### I. Plaintiff's First Cause of Action

Plaintiff's first claim seeks a declaratory judgment that Defendant seeks to refuse coverage to Jefferson Pilot in violation of law. The question before the Court on this cause of action is whether or not the insurance policy in question covered Feldman's actions.

When construing contracts for insurance, courts are to use the normal rules of contract interpretation. However, in the case of any ambiguity, such contracts are to be construed in favor of the insured. *Rhame v. National Grange Mut. Ins. Co.*, 238 S.C. 539, 544, 121 S.E.2d 94, 97 (1961). "A contract is ambiguous when the terms of the contract are inconsistent on their face, or are reasonably susceptible of more than one interpretation." *Hawkins v. Greenwood Development Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App. 1997). The question of whether or not a contract is susceptible of more than one interpretation is a question of law for the court. *Id.*

Defendant asserts that Feldman's actions were clearly not the type of behavior that was covered by Westport's policy. Plaintiff asserts that the terms of the contract were ambiguous, and thus summary judgment would be inappropriate on this issue. The term of the contract in question is the limitation on defamation or infliction of emotional distress which is:

> committed in the acquisition, researching, filming, videotaping, preparation, utterance or dissemination of "matter" first published, printed, produced, distributed, exhibited, displayed, broadcast, telecast, cablecast, "advertised" or contracted for by the insured or with the insured's permission, or with the permission of the insured's "subsidiary", during the policy period.

Defendant's definition of "matter" is "words, sounds, or images, made or to be made available to a mass public audience through the insured's publications, broadcasts, films or other forms of mass media."

Plaintiff asserts that Feldman's defamation of Murphy were words that were made available to a mass public audience, and thus a reasonable person could interpret the policy to cover such actions. However, the Court sees no ambiguity in the situation at hand, and cannot accept Plaintiff's interpretation of the policy.

The policy language in question unambiguously applies to media communication designed to reach a mass audience. Feldman's behavior, by contrast, involved talking to a few people and writing a letter for distribution to a small group of people involved with the situation. This was not designed to reach a mass audience within the meaning of the insurance policy, and thus Plaintiff's contention that the policy language "is reasonably susceptible to different interpretation[s]" is incorrect.[1]

Accordingly, Feldman's behavior was not covered by the language of Westport's insurance policy. Therefore, Plaintiff's cause of action for a declaratory judgment that Westport's termination of insurance was unlawful fails as a matter of law, and Defendant's Motion for Summary Judgment is granted as to this claim.

## II. Plaintiff's Claim for Waiver/Estoppel

The Court next turns to Plaintiff's second cause of action, its claim for waiver and estoppel. Plaintiff claims that

---

1. Plaintiff's reliance upon *Westport Ins. Corp. v. Harvest House Publishers, Inc.* is also unavailing. 2006 WL 696295 (D.Or. Mar. 15, 2006). While Plaintiff points out that this decision appears to be the only other federal court decision interpreting a substantially identical insurance contract from Defendant, the facts of that case are wholly distinguishable from the present case. In that case, the underlying behavior at issue was the publishing of a religious encyclopedia which made defamatory statements about a certain church. Publishing a book for widespread consumption is quite clearly a form of publication intended to reach a mass public audience in a way that speaking to associates and showing a letter is clearly not. As such, this case is of no relevance to the matter presently before the Court.

Defendant waived its ability to decline a claim by Jefferson Pilot by making repeated representations of coverage. However, South Carolina courts have repeatedly and explicitly held that "[w]aiver cannot create coverage and cannot bring into existence something not covered in the policy." *Laidlaw Envtl. Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co.*, 338 S.C. 43, 53, 524 S.E.2d 847, 852 (Ct.App.1999) (quoting *Alverson v. Minnesota Mut. Life Ins. Co.*, 287 S.C. 432, 434, 339 S.E.2d 140, 142 (Ct.App.1985)). Here, this is precisely what Plaintiff is attempting to do—force Defendant to cover a certain liability which its policy does not require it to cover. Accordingly, Plaintiff's waiver claim fails as a matter of law and Defendant's Motion for Summary Judgment is granted as to this claim.

■ However, Plaintiff also states a cause of action for equitable estoppel. According to Plaintiff, Nesbitt made representations that Defendant's policy would cover Jefferson Pilot's liability arising out of Feldman's actions. Plaintiff asserts that it relied upon these representations, that it did not have the means by which to discover that the behavior was not in fact covered by the policy, and was prejudiced by that reliance. Under South Carolina law:

> The essential elements of equitable estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance.

*Crescent Co. v. Ins. Co. of North America*, 266 S.C. 598, 225 S.E.2d 656, 659 (1976). The Supreme Court of South Carolina has also held:

> The essential elements of equitable estoppel as related to the party estopped are: (1) conduct which amounts to a

false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Boyd v. BellSouth Telephone Telegraph Co.*, 369 S.C. 410, 422, 633 S.E.2d 136, 142 (2006).

■ Generally under South Carolina law, "[t]he rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom ..." *Pitts v. New York Life Ins. Co.*, 247 S.C. 545, 551, 148 S.E.2d 369, 371 (1966) (quoting 29A Am.Jur. *Insurance* § 1135). However, there have been exceptions where South Carolina courts have held that estoppel does allow a court to compel coverage where no coverage existed under the written terms of the policy.

Plaintiff seeks to rely upon these exceptional cases, and asserts that this case is materially indistinguishable from those cases. Citing *Ellis v. Metropolitan Casualty Insurance Co.*, 187 S.C. 162, 197 S.E. 510 (1938), and *Moore v. Palmetto State Life Insurance Co.*, 222 S.C. 492, 73 S.E.2d 688 (1952), Plaintiff focuses on the time lapse between the representation of cover-

age and the subsequent refusal to provide that coverage. In *Ellis*, the court held that an insurer was estopped from rejecting a claim for coverage filed three weeks after the incident and claim occurred when the insurer had known about the claim but had not informed the insured he would not be covered. Similarly, in *Moore*, six weeks elapsed between the time an application for life insurance was filed and the insurer sought to refuse coverage; however, in the interim, the potential insured had died believing his life was insured. Plaintiff asserts that in this case, more than six years elapsed, so this should be treated as an exception along the lines of those precedents.

However, by focusing exclusively on the time lapse, Plaintiff seems to fundamentally misunderstand the concept of detrimental reliance. In both of those cases, the plaintiffs relied upon the insurers' representations of insurance, to their detriment. Plaintiff has shown that it believed Defendant's insurance policy to provide coverage in the case at bar, and, of course, Plaintiff will be hurt should Defendant's insurance policy not cover Feldman's actions, because Plaintiff will have to provide coverage for the entirety of the jury's award of damages to Murphy. However, it is crucial to any cause of action for estoppel that the party seeking estoppel be harmed or prejudiced *because of* reliance upon the erroneous representations. Here, Plaintiff has not alleged how this is so.

The fact is that Plaintiff, as the party in charge of settlement negotiations with Murphy and ultimately in charge of providing a defense against Murphy's claims at trial, had a duty to diligently pursue the most advantageous outcome for the insurer or insurers, regardless of whether or not Defendant's policy covered Feldman's actions. So Plaintiff cannot claim, absent an admission of a breach of duty, that it acted any differently in the course of its

negotiations or trial defense simply because it believed that Defendant would be providing coverage for any liability beyond $1,000,000.00. In fact, Plaintiff has explicitly stated that it would not have negotiated the settlement any differently had it know that Defendant would not be providing coverage. Therefore, coverage (or lack thereof) under Defendant's policy would not have altered Plaintiff's actions at all, and would have had no impact on the ultimate jury award, so Plaintiff cannot claim that it was harmed by Defendant's representations of coverage.

To put it simply, in both *Moore* and *Ellis*, the plaintiffs were harmed by their reliance upon the misrepresentations of the insurers. Had the insurers been upfront about the terms of the policy in those cases, plaintiffs could have sought insurance elsewhere, in which case they would have had coverage when the underlying incident occurred. Here, conversely, had Defendant accurately represented the terms of the policy to Plaintiff, nothing different would have occurred, and Plaintiff would have been responsible for insuring the entirety of Jefferson Pilot's liability for Feldman's actions. This is in large part due to the fact that unlike Moore and Ellis, Plaintiff in this case was *not* the insured. Jefferson Pilot was the insured, and Plaintiff was merely the coinsurer. Therefore, had Defendant not mistakenly assumed its policy did provide coverage, and informed Plaintiff from the outset that it would be refusing any claim for coverage, Plaintiff would not have been able to take any other action to seek additional insurance.

■ Furthermore, even if it had shown detrimental reliance, Plaintiff cannot claim estoppel because it had the means by which to discover Defendant's grounds for refusing coverage. Plaintiff had copies of the policy in its possession. Unlike many

individual insureds seeking to use estoppel in insurance cases, Plaintiff is a sophisticated corporation well-versed in the law and practice of insurance, and is familiar with the ins and outs of co-insurance situations. Plaintiff's claims representative and its attorneys had possession of Defendant's policy, and so should have known that Defendant would have grounds to decline coverage under the policy.

Accordingly, the general rule that estoppel cannot be used to extend the scope of insurance applies to this case, and Plaintiff's cause of action for equitable estoppel fails as a matter of law.

### III. Plaintiff's Claim for Subrogation

Plaintiff's third and fourth causes of action are claims for subrogation. Essentially, Plaintiff is claiming that Defendant should be responsible for paying all of Jefferson Pilot's liability above and beyond the initial $1,000,000.00 covered by Plaintiff's primary policy.

South Carolina state courts have not yet weighed in on the issue of whether or not the doctrine of equitable subrogation can apply in a case between co-insurers. Furthermore, only one federal court has had to face the issue, and it decided that the doctrine could apply in such a situation because "the parties both are tied to ... the insured, by duties of good faith and fair dealing." *Royal Ins. Co. of America v. Reliance Ins. Co.*, 140 F.Supp.2d 609, 618 (D.S.C.2001).

■ Under South Carolina law, a claim for equitable subrogation requires:

(1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4)

no injustice will be done to the other party by the allowance of the equity. *Id.* at 617–18.

■ The point of contention between the two parties is on the fourth requirement, whether or not injustice would be done to Defendant by holding it liable on an equitable subrogation claim. Plaintiff asserts that "there is no injustice by requiring an insurer who waived its right to contest coverage and sat upon its rights for seven years from paying the debt." (Pl.'s Resp. at 14.)

However, for the same reasons given by the Court above regarding Plaintiff's equitable estoppel claim, the Court finds that equity does not require Defendant to pay Plaintiff the amount of money it would have been liable for if its policy had in fact covered Jefferson Pilot for Feldman's behavior. The fact is that if Defendant's policy does not cover this liability, Plaintiff's umbrella policy must cover any liability incurred by Jefferson Pilot arising out of the underlying incidents. Therefore, if, from the outset, Defendant had informed Plaintiff that this conduct was not covered under Defendant's insurance policy, Plaintiff would have lawfully been liable for the entire amount.

Furthermore, as previously explained, the fact that Plaintiff thought that Defendant's policy provided coverage did not affect the final jury award to Murphy, so Plaintiff cannot claim detrimental reliance. The Court sympathizes with Plaintiff, which thought it was not going to have to pay the nearly $3 million in damages above the limits of its primary policy. However, there is no indication that this misunderstanding was due to any bad faith on the part of Defendant, which by all appearances made a simple mistake in representing that its policy did, in fact, cover Feldman's transgressions. While there is doubtless some appeal in Plaintiff's asser-

tion that Defendant should be held to their misrepresentation, the Court again circles around to the fact that under the written terms of the respective policies, Plaintiff was responsible for insuring the entirety of Jefferson Pilot's liability, and that it does not and cannot show this Court any way in which it was disadvantaged by any sort of reliance upon Defendant's mistaken representations. Accordingly, fairness dictates that this Court dismiss Plaintiff's claim for subrogation.

### IV. Plaintiff's Claim for Breach of Implied Contract

■ Finally, the Court addresses Plaintiff's fifth and final cause of action, for breach of an implied contract. Essentially, Plaintiff's argument is that Defendant's representations of coverage to Plaintiff provided an implied contract, and this Court should not allow Defendant to evade its obligations under that contract.

However, in order for any contractual relationship, including an implied contract, to exist, consideration must be given by each side in exchange for the consideration promised or furnished by the opposite side. Here, even if the Court were to construe Defendant's mistaken representations of coverage as some sort of promise to Plaintiff, it would not establish a contractual relationship because Plaintiff furnished no consideration in exchange for this. Plaintiff seems to argue that its consideration was the supervision and direction of the defense in the case, but it has acknowledged that it was obligated to do that under the terms of its primary insurance relationship with Jefferson Pilot, so in actuality this had nothing to do with Defendant's representations. Therefore, any litigation-related duties on the part of Plaintiff were a pre-existing duty, the performance of which cannot form the basis of consideration sufficient to establish a contract. Accordingly, no implied contract was formed between Plaintiff and Defen-

dant regarding Defendant providing coverage to Jefferson Pilot for Feldman's actions, and Plaintiff's final cause of action must therefore be dismissed.

Since this Court has determined that all of Plaintiff's claims against Defendant fail as a matter of law, Defendant's Motion for Summary Judgment is granted.

### V. Plaintiff's Motion for Jury Trial

Plaintiff has also filed a Motion for a Jury Trial as to its claims against Defendant. However, since this Court has concluded that all five of Plaintiff's causes of action fail as a matter of law and has granted Defendant's Motion for Summary Judgment, Plaintiff has no surviving claims to bring before a jury. Accordingly, Plaintiff's Motion for a Jury Trial is rendered moot.

### CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that Defendant Westport Insurance Corporation's Motion for Summary Judgment is **GRANTED**. Furthermore, for the foregoing reasons, it is also therefore **ORDERED** that Plaintiff Liberty Mutual Insurance Company's Motion for Jury Trial is rendered **MOOT**.

**AND IT IS SO ORDERED.**